IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIENNE HEITZ, | ) | FILED: AUGUST 25, 2008 |
| | ) | 08CV4849 |
| Plaintiff, | ) | JUDGE HART |
| | ) | MAGISTRATE JUDGE SCHENKIER |
| v. | ) No. | YM |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Now comes the plaintiff, ADRIENNE HEITZ, by her attorneys, MARK D.

DE BOFSKY, DALEY, DE BOFSKY & BRYANT, and complaining against the

defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA, she states:

### Jurisdiction and Venue

1.    Jurisdiction of the court is based upon the Employee Retirement Income

Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§1132(e) (1) and 1132(f).

Those provisions give the district courts jurisdiction to hear civil actions brought to recover

benefits due under the terms of an employee welfare benefit plan which, in this case,

consists of a group long term disability insurance policy underwritten by the Life Insurance

Company of North America and issued to Trustees of the Group Insurance Trust for

Employers in the Services Industry, and which was subscribed to by The TriZetto Group,

Inc., an organization that employed plaintiff at all times relevant hereto (Policy No.

VDT0030048).  In addition, this action may be brought before this court pursuant to 28

U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the

laws of the United States.

2.    The ERISA statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials.   Those avenues of appeal have been exhausted by virtue of defendant's refusal to consider plaintiff's final appeal.

3.    Venue is proper in the Northern District of Illinois.  29 U.S.C. §1132(e)(2), 28 U.S.C. §1391.

### Nature of Action

4.    This is a claim seeking an award to plaintiff of disability income benefits pursuant to the LINA Long Term Disability ("LTD") policy ("the Policy") (A true and correct copy of the Policy is attached hereto as Exhibit "A"). This action is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

### The Parties

5.    Adrienne Heitz ("Heitz") (Incident No. 805335) is and was a resident of Wheeling, Illinois at all times relevant hereto, and the events, transactions, and occurrences relevant to Heitz's claim of disability took place within the Northern District of Illinois.

6.    At all times relevant hereto, Life Insurance Company of North America ("LINA") has been doing business throughout the United States and within the Northern District of Illinois; and providing welfare benefits, including the disability insurance benefits payable under the Policy within the Northern District of Illinois.

7.    At all times relevant hereto, the Policy constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to her employment, Heitz received coverage under the Policy as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Policy.

***Statement of Facts***

8.     The TriZetto Group employed Heitz, age 53 (d.o.b. 03/xx/1955), as a claim adjuster until January 30, 2003, when she ceased working due to a long history of bilateral retinal detachment and bilateral cataracts. Due to her conditions, Heitz has been unable to perform the material duties of her occupation, or any other occupation, since 2003.

9.     Subsequent to ceasing her employment, Heitz made a claim for benefits under the Policy stating that due to her condition, she was entitled to disability benefits based on meeting the Policy's definition of "disability," which states in relevant part, "An Employee will be considered Disabled if because of Injury or Sickness: 1. Unable to perform all the material duties of his regular occupation; and after benefits have been payable for 36 months, inability to perform all the material duties of any gainful occupation for which he or she is or may reasonably become qualified based on his training, education or experience."

10.     LINA paid disability benefits to Heitz under the Policy commencing on July 30, 2003, and those benefits continued without interruption through March 20, 2006 at the gross benefit rate of $1,944.00 per month (i.e., 60% of salary).

11.     After approving her claim for benefits, LINA insisted that Heitz apply for Social Security disability benefits, and referred her to its vendor, Advantage 2000 Consultants, to represent her and advocate on her behalf to the Social Security Administration.  On February 23, 2006, the Social Security Administration issued a determination that Heitz, because of her impaired vision, was disabled since January 31, 2003, thus signifying her inability to engage in "any substantial gainful activity." (Definition of disabled under Social Security Act) (a true and correct copy of the Social

Security Administration decision is attached hereto and by reference incorporated herein as Exhibit "B").   On account of the Social Security award, due to policy provisions that coordinate Social Security disability benefits and LTD benefits issued by LINA, the initial SSDI award of $1,182.00 is coordinated with the gross benefit amount, resulting in a net benefit of $757.00 per month due since March 20, 2006.

12.    Even though there was no improvement in Heitz's condition, and notwithstanding the Social Security award a month earlier, LINA abruptly terminated Heitz's benefit payments as of March 20, 2006 without valid cause or justification.

13.    At the time Heitz stopped receiving benefits, she continued to meet LINA's definition of "disabled" and was entitled to ongoing LTD payments for as long as she remained disabled until she reached age 65.

14.    Following the benefit termination, Heitz, appealed LINA's decision, seeking reinstatement of her LTD benefits. She supported her claim for benefits with numerous medical records and reports, certifying and establishing her disability. Despite the consistency of the evidence submitted on Heitz's behalf, LINA nonetheless refused to alter the decision to terminate payment of benefits.

15.    In a letter dated November 28, 2007, LINA advised plaintiff that it would "consider another appeal."  That letter set forth no deadline for appeal.  (a true and correct copy of the letter is attached hereto and by reference incorporated herein as Exhibit "C").

16.    In accordance with LINA's invitation to submit another appeal, Heitz submitted a claim appeal on July 10, 2008 accompanied by substantial new and material medical evidence further corroborating Heitz's entitlement to benefits.  However, LINA

flatly refused to consider that appeal despite its earlier invitation to Heitz to submit a new appeal.

18.     Since the onset of her disability, Heitz has continuously met the definition of "disabled" as quoted in paragraph 9, above; she has been under the continuous care of treating physicians who have certified her disability and reported to LINA that she has met the Policy's definition of "disabled" since January, 2003, and even emphasized her continuing disabled status to the present.

19.     The determination by LINA that Heitz is not disabled is contrary to the evidence and has no substantial or reliable evidentiary support.

20.     At all times relevant hereto, LINA owed Heitz a fiduciary duty pursuant to 29 U.S.C. § 1104(a)(1) to act exclusively in her interest for the sole purpose of paying benefits due; and LINA was obligated to afford her a "higher-than-marketplace" duty.

21.     Despite the foregoing duty, LINA acted under a conflict of interest when it denied her benefit.  In addition, LINA abused its discretion by terminating the benefit payments when it had advocated a different position to the Social Security Administration.

22.     LINA is guilty of unclean hands by rejecting the Social Security determination and has therefore forfeited its right to offset any sums due to plaintiff by any amount of Social Security benefits awarded.

23.     LINA is also guilty of denying plaintiff a full and fair review of her claim as guaranteed by 29 U.S.C. § 1133.

24.     As a direct and proximate result thereof, based on the evidence submitted to LINA establishing that Heitz has met the Policy's disability definition, and that she continues to meet the definition of "disabled," Heitz is entitled to *de novo* consideration of

her claim leading to reinstatement of the balance of her LTD benefits owed since March 2006, and such benefits must continue until she recovers from disability, dies, or reaches the age of 65, whichever comes first.

### *Relief Sought*

WHEREFORE, plaintiff prays for the following relief:

A.    That the court grant plaintiff plenary consideration of her claim in accordance with her statutory and due process rights and enter judgment in plaintiff's favor and against LINA and that the court order LINA to pay disability income benefits to Heitz retroactive to March 2006 in an amount equal to the contractual amount of benefits to which she is entitled;

B.    That the court order LINA to pay plaintiff prejudgment interest at a rate of 9% per annum on all benefits that have accrued prior to the date of judgment in accordance with 215 ILCS 5/357.9;

C.    That the court order LINA to continue paying plaintiff benefits so long as she meets the policy terms and conditions for receipt of benefits;

D.    That the court award plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

E.    That plaintiff recovers any and all other relief to which she may be entitled, as well as the costs of suit.

_/s/ Mark D. DeBofsky_____
Mark D. DeBofsky

August 25, 2008

Mark D. DeBofsky
Daley, DeBofsky & Bryant
55 W. Monroe St., Ste 2440
Chicago, Illinois 60603
(312) 372-5200
FAX (312) 372-2778

 

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603 TDD (800) 552-5744
**A STOCK INSURANCE COMPANY**

GROUP POLICY

| | |
|---|---|
| **POLICYHOLDER:** | TRUSTEE OF THE GROUP INSURANCE TRUST FOR EMPLOYERS IN THE SERVICES INDUSTRY |
| **SUBSCRIBER:** | The TriZetto Group, Inc. |
| **POLICY NUMBER:** | VDT-030048 |
| **POLICY EFFECTIVE DATE:** | January 1, 2001 |
| **POLICY ANNIVERSARY DATE:** | January 1 |

08CV4849
JUDGE HART
MAGISTRATE JUDGE SCHENKIER
YM

This Policy describes the terms and conditions of coverage. It is issued in Delaware and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.

Robert J. Upton, Secretary

Michael W. Bell, President

TL-004700                                                                                        O/O v-1

**PITTSBURGH**

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

## TABLE OF CONTENTS

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SCHEDULE OF BENEFITS FOR CLASS I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ELIGIBILITY FOR INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

EFFECTIVE DATE OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TERMINATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONTINUATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

DESCRIPTION OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PITTSBURGH

NOV 16 2000

Group Life & Disability
Coverage Unit

 

## SCHEDULE OF BENEFITS

**Premium Due Date**            Premiums are due in arrears on the date coinciding with the day of the
                                Policy Anniversary Date or the last day of the month, if earlier.

**Participation Requirements**  The greater of 40% of Eligible Employees or a minimum of 10 Employees.

**Classes of Eligible Employees**

Class 1  All active, Full-time Employees of the Employer regularly working a minimum of 32 hours per week.

PITTSBURGH

JAN 17 2001

Group Life & Disability
Coverage Unit

3

 

## SCHEDULE OF BENEFITS FOR CLASS 1

**Eligibility Waiting Period**

For Employees hired on or before the Policy Effective Date:    No Waiting Period

For Employees hired after the Policy Effective Date:    First of the month following 30 days of Active Service.

**Definition of Disability/Disabled**
The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
1.    unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
2.    unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 36 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
1.    unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
2.    unable to earn 80% or more of his or her Indexed Covered Earnings.

The Insurance Company will require proof of earnings and continued Disability.

**Definition of Optimum Ability**
1.    for the first 36 months that benefits are payable, the greatest extent of work the Employee is able to do in his or her Regular Occupation;
2.    after 36 months, the greatest extent of work the Employee is able to do in any occupation based on education, training or experience.

The Employee's ability to work is based on the following:
1.    medical evidence submitted by the Employee;
2.    consultation with the Employee's Physician;
3.    evaluation of the Employee's ability to work by not more than three independent experts if required by the Insurance Company; and
4.    an offer of employment that meets the Employee's capacity to do the work is made by an employer.

There is no cost to the Employee for evaluation by an independent expert when required by the Insurance Company to determine Optimum Ability.

The independent expert must be:
1.    licensed, registered or certified as required by the laws of the state in which the evaluation is made; and
2.    acting within the scope of that license, registration or certificate.

**PITTSBURGH**

**NOV 16 2000**

Group Life & Disability
Coverage Unit

 

**Definition of Covered Earnings**
Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It includes earnings received from commissions but not bonuses, overtime pay and other extra compensation. Covered Earnings are determined initially on the date an Employee applies for coverage. A change in the amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

Commissions will be averaged for the 12 calendar months just prior to the date Disability begins, or the months employed, if less than 12 months.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

| | |
|---|---|
| **Elimination Period** | 180 days |
| **Gross Disability Benefit** | The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit. |
| **Maximum Disability Benefit** | $10,000 per month |
| **Minimum Disability Benefit** | $100 per month |

**Disability Benefit Calculation**
The Monthly Disability Benefit for any month the Employee is Disabled is the Gross Disability Benefit minus Other Income Benefits and the Calculation for Optimum Ability.

The Calculation for Optimum Ability is the earnings the Employee could earn if working at Optimum Ability, minus Disability Earnings.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.



PITTSBURGH

NOV 16 2000

Group Life & Disability
Coverage Unit

 

**Work Incentive Benefit Calculation**

An Employee may work for wage or profit while Disabled. In any month in which the Employee works and a Disability Benefit is payable, the Work Incentive Benefit Calculation applies. It is determined as follows:

1.   For each month during the first 24 months that Disability Benefits are payable, the amount of the Work Incentive Benefit equals (a) minus (b).

   (a)   equals (i) minus (ii), but not more than the Gross Disability Benefit shown in the Schedule of Benefits.
       (i) is 100% of Indexed Covered Earnings.
       (ii) is the sum of Other Income Benefits, including Disability Earnings.
   (b)   equals the Calculation for Optimum Ability.

The Calculation for Optimum Ability is the earnings an Employee could earn if working at Optimum Ability, minus Disability Earnings.

2.   After those first 24 months, the amount of benefit to be paid equals (c) minus (d).

   (c)   equals the Gross Disability Benefit minus the sum of 50% of Disability Earnings and 100% of the remaining Other Income Benefits.
   (d)   equals the Calculation for Optimum Ability.

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

No Disability Benefits will be paid, and insurance will end if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and the Employee refuses to do so without Good Cause.

**Additional Benefits**

*Survivor Benefit*

| | |
|---|---|
| Amount of Benefit: | 100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month. |
| Maximum Benefit Period | A single lump sum payment equal to 3 monthly Survivor Benefits. |

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

**PITTSBURGH**

NOV 16 2000

Group Life & Disability
Coverage Unit

 

**Initial Premium Rates**

The Monthly Premium for each Employee is based on the Employee's Age and amount of Covered Payroll. The Monthly Rates per $100 of Covered Payroll are listed below.

| Age | Rate | Age | Rate |
|-----|------|-----|------|
| 18-29 | $0.09 | 50-54 | $1.06 |
| 30-34 | $0.22 | 55-59 | $1.20 |
| 35-39 | $0.36 | 60-64 | $0.92 |
| 40-44 | $0.53 | 65-69 | $0.69 |
| 45-49 | $0.80 | 70+ | $0.46 |

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $16,667.

TL-004774

PITTSBURGH

NOV 16 2000

Group Life & Disability
Coverage Unit

7

 

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for coverage within 31 days after he or she becomes eligible or within 31 days after a Life Status Change, is effective on the latest of the following dates.
1.      The Policy Effective Date.
2.      The date payroll deduction is authorized.
3.      The date the Employer or Insurance Company receives the completed enrollment form.

If an Employee's enrollment form is received more than 31 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

PITTSBURGH

NOV 16 2000

Group . . . & Disability
Coverage Unit

8

 

## TERMINATION OF INSURANCE

An Employee's coverage will end on the earliest of the following dates:
1.  the date the Employee is eligible for coverage under a plan intended to replace this coverage;
2.  the date the Policy is terminated;
3.  the date the Employee is no longer in an eligible class;
4.  the day after the end of the period for which premiums are paid;
5.  the date the Employee is no longer in Active Service;
6.  the date benefits end for failure to comply with the terms and conditions of the Policy.

Disability Benefits will continue for an Employee receiving Disability Benefits when the Policy terminates, if he or she remains disabled and meets the requirements of the Policy. Any later period of Disability, regardless of cause, that begins when the Employee is eligible under another group disability coverage provided by any employer, will not be covered.

TL-007505.00

## CONTINUATION OF INSURANCE

Disability Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first.

TL-004716

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits to each class of Insureds.

**Disability Benefits**
The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

**Elimination Period**
The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes.

PITTSBURGH

NOV 16 2000

Group Life & Disability
Coverage Unit

 

**Continuity of Coverage**
The following provisions will apply to any Employee who was insured under a Prior Plan.

The Elimination Period under this Policy will be waived for a Disability which begins while the Employee is insured under this Policy if all of the following conditions are met:
1.  the Disability results from the same or related causes as a Disability for which benefits were payable under the Prior Plan;
2.  benefits are not payable for the Disability under the Prior Plan solely because it is not in effect;
3.  an Elimination Period would not apply to the Disability if the Prior Plan had not ended;
4.  the Employee was in Active Service for more than 14 consecutive days while covered under this Policy; and
5.  the Disability begins within 6 months of the Employee's return to Active Service.

Benefits will be determined based on the lesser of: (1) the amount of the gross disability benefit under the Prior Plan and any applicable maximums; or (2) those provided by this Policy.

Except for any amount of benefit in excess of a Prior Plan's benefits, the Pre-existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied under the Prior Plan's pre-existing condition limitation.

If benefits are payable under the Prior Plan for the Disability, no benefits are payable under this Policy.

**Disability Benefit Calculation**
The Disability Benefit Calculation is shown in the Schedule of Benefits. Monthly Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month. If an Employee is working while Disabled, the Disability Benefit Calculation will be the Work Incentive Benefit Calculation.

**Work Incentive Benefit Calculation**
The Work Incentive Benefit Calculation is shown in the Schedule of Benefits. An Employee may work for wage or profit while Disabled. In any month in which the Employee works and a Disability Benefit is payable, the Work Incentive Benefit Calculation applies.

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

**Minimum Benefit**
The Insurance Company will pay the Minimum Benefit shown in the Schedule of Benefits despite any reductions made for Other Income Benefits. When Disability Benefits are reduced in order to recover any overpayment, any minimum payment will be applied to any overpayment due to the Insurance Company.

PITTSBURGH

NOV 16 2000

 Disability
Coverage Unit

 

**Other Income Benefits**

An Employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, the Insurance Company may reduce the Disability Benefits by the amount of such Other Income Benefits.

Other Income Benefits include:

1. any amounts received (or assumed to be received*) by the Employee or his or her dependents under:
   - the Canada and Quebec Pension Plans;
   - the Railroad Retirement Act;
   - any local, state, provincial or federal government disability or retirement plan or law payable for Injury or Sickness provided as a result of employment with the Employer;
   - any work loss provision in mandatory "No-Fault" auto insurance;
   - any workers' compensation, occupational disease, unemployment compensation law or similar state or federal law payable for Injury or Sickness arising out of work with the Employer, including all permanent and temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted;

2. any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on his or her own behalf or for his or her dependents; or which his or her dependents receive (or are assumed to receive*) because of his or her entitlement to such benefits;

3. any Retirement Plan benefits funded by the Employer. "Retirement Plan" means any defined benefit or defined contribution plan sponsored or funded by the Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan;

4. any proceeds payable under any franchise or group insurance or similar plan. If other insurance applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay for its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies;

5. any amounts paid because of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined;

6. any Disability Earnings. If the Work Incentive Benefits Calculation applies to the Employee, the Insurance Company will only reduce the Employee's Disability Benefits by Disability Earnings to the extent provided under the Employee's Work Incentive Benefit Calculation.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law because of an Employee's entitlement to benefits.

*See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

Any increase in Other Income Benefits during a period of Disability due to a cost of living adjustment will not be considered in calculating the Employee's Disability Benefits after the first reduction is made for any Other Income Benefits. This section does not apply to any cost of living adjustment for Disability Earnings.

PITTSBURGH

NOV 16 2000

& Disability
Coverage Unit

 

*Lump Sum Payments*

Other Income Benefits or earnings paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over five years.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (and his or her dependents, if applicable) are receiving benefits for which they are eligible from Other Income Benefits. The Insurance Company will reduce the Employee's Disability Benefits by the amount from Other Income Benefits it estimates are payable to the Employee and his or her dependents.

The Insurance Company will waive Assumed Receipt of Benefits, except for Disability Earnings for work the Employee performs while Disability Benefits are payable, if the Employee:

1. provides satisfactory proof of application for Other Income Benefits;
2. signs a Reimbursement Agreement;
3. provides satisfactory proof that all appeals for Other Income Benefits have been made unless the Insurance Company determines that further appeals are not likely to succeed; and
4. submits satisfactory proof that Other Income Benefits were denied.

The Insurance Company will not assume receipt of any pension or retirement benefits that are actuarially reduced according to applicable law, until the Employee actually receives them.

The Insurance Company may limit its waiver of Assumed Receipt of Benefits if:

1. there is a change in factors bearing on the risk assumed, including but not limited to a significant increase in time required by the party responsible for paying the Other Income Benefits to determine whether Other Income Benefits are payable; or
2. any state or Federal law or regulation is amended so that it affects the Insurance Company's benefit obligations.

**Successive Periods of Disability**

A separate period of Disability will be considered continuous:

1. if it results from the same or related causes as a prior Disability for which benefits were payable; and
2. if, after receiving Disability Benefits, the Employee returns to work in his Regular Occupation or a Qualified Alternative for less than 6 consecutive months; and
3. if the Employee earns less than 80% of Indexed Covered Earnings during at least one month.

Any later period of Disability, regardless of cause, that begins when the Employee is eligible for coverage under another group disability plan provided by any employer will not be considered a continuous period of Disability.

For any separate period of disability which is not considered continuous, the Employee must satisfy a new Elimination Period.

**PITTSBURGH**

**NOV 1 6 2000**

Group Life & Disability
Coverage Unit

 

# LIMITATIONS

**Mental Illness, Alcoholism and Drug Abuse Limitation**
The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a
Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly
Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.  Alcoholism
2.  Anxiety disorders
3.  Delusional (paranoid) disorders
4.  Depressive disorders
5.  Drug addiction or abuse
6.  Eating disorders
7.  Mental illness
8.  Somatoform disorders (psychosomatic illness)

If, before reaching his or her lifetime maximum benefit, an Employee is confined in a hospital for more than
14 consecutive days, that period of confinement will not count against his or her lifetime limit. The
confinement must be for the Appropriate Care of any of the conditions listed above.

**Pre-Existing Condition Limitation**
The Insurance Company will not pay benefits for any period of Disability caused or contributed to by, or
resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which
the Employee incurred expenses, received medical treatment, care or services including diagnostic measures,
took prescribed drugs or medicines, or for which a reasonable person would have consulted a Physician
within 3 months before his or her most recent effective date of insurance.

The Pre-existing Condition Limitation will apply to any added benefits or increases in benefits. This
limitation will not apply to a period of Disability that begins after an Employee is covered for at least 12
months after his or her most recent effective date of insurance, or the effective date of any added or increased
benefits.

# SOCIAL SECURITY ASSISTANCE

The Insurance Company may help the Employee in applying for Social Security Disability Income (SSDI)
Benefits, and may require the Employee to file an appeal if it believes a reversal of a prior decision is
possible.

The Insurance Company will reduce Disability Benefits by the amount it estimates the Employee will receive,
if the Employee refuses to cooperate with or participate in the Social Security Assistance Program.

**PITTSBURGH**

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

## RECOVERY OF OVERPAYMENT

The Insurance Company has the right to recover any benefits it has overpaid.  The Insurance Company may use any or all of the following to recover an overpayment:

1.　　　request a lump sum payment of the overpaid amount;
2.　　　reduce any amounts payable under this Policy; and/or
3.　　　take any appropriate collection activity available to it.

The Minimum Benefit amount will not apply when Disability Benefits are reduced in order to recover any overpayment.

If an overpayment is due when the Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-007500.00

## ADDITIONAL BENEFITS

### Rehabilitation During a Period of Disability

If the Insurance Company determines that a Disabled Employee is a suitable candidate for rehabilitation, the Insurance Company may require the Employee to participate in a Rehabilitation Plan. The Insurance Company has the sole discretion to approve the Employee's participation in a Rehabilitation Plan and to approve a program as a Rehabilitation Plan.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

If an Employee fails to fully cooperate in all required phases of the Rehabilitation Plan without Good Cause, no Disability Benefits will be paid, and insurance will end.

### Spouse Rehabilitation Benefit

While an Employee is Disabled, his or her Spouse may, at the option of the Insurance Company, be eligible to participate in a Spouse Rehabilitation Plan.  To be eligible, the following conditions must be met:

1.　　　the Employee must be continuously Disabled for 12 months;
2.　　　his or her Spouse's earnings must be 60% or less than the Employee's Covered Earnings; and
3.　　　his or her Spouse must be determined by the Insurance Company to be a suitable candidate for rehabilitation.

"Spouse," as used in this provision, means the Employee's lawful Spouse living with him or her on the date the Employee's Disability begins.  The Spouse Rehabilitation Plan will end if the Employee's Spouse is no longer living with the Employee.

14

PITTSBURGH

NOV 1 6 2000

　...  Life & Disability,
　Coverage Unit

 

The Spouse's Rehabilitation Plan may include, at the Insurance Company's discretion, payment of the Spouse's education expense, reasonable job placement expenses and moving expenses. It may also include family care expenses, if necessary, for his or her Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of his or her Spouse's earnings from participation in the Rehabilitation Plan. If his or her Spouse was working before the Spouse Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from his or her Spouse's participation in the Spouse Rehabilitation Plan.

TL-007501.00

**Conversion Privilege for Disability Insurance Benefits**
If an Employee's insurance ends because employment with the Employer ends, or an Employee is laid off or on an uninsured leave of absence, he or she may be eligible for conversion insurance.

To be eligible, an Employee must have been insured for Disability Benefits and actively at work for at least 12 straight months. If the Employee makes application for conversion insurance within 31 days after insurance under this Policy ends, conversion insurance will be effective as of the date insurance under this Policy ends. If an Employee makes application more than 31 days after insurance under this Policy ends, the Insurance Company will require the Employee to provide satisfactory evidence of good health at his or her own expense. Conversion insurance will be effective on the date the Insurance Company agrees in writing to insure him or her. An Employee must apply for conversion insurance within 62 days after insurance ends.

The benefits of the conversion plan will be those benefits offered at the time an Employee applies. The premium will be based on the rates in effect for conversion plans at that time.

Conversion insurance is not available if any of the following conditions apply:
1.      the Employee is retired or age 70 or older;
2.      the Employee is not in Active Service because of Disability;
3.      the Policy is canceled for any reason;
4.      the Employee is no longer in a Class of Eligible Employees, but is still employed by the Employer.

TL-007504.00

**Survivor Benefit**
The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death.

TL-005107

PITTSBURGH

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

## TERMINATION OF DISABILITY BENEFITS

Benefits will end on the earliest of the following dates:
1.   the date the Employee earns 80% or more of his or her Indexed Covered Earnings;
2.   the date the Insurance Company determines he or she is not Disabled;
3.   the end of the Maximum Benefit Period;
4.   the date the Employee dies;
5.   the date the Employee refuses, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan;
6.   the date the Employee refuses, without Good Cause, to fully cooperate in a Transitional Work Arrangement;
7.   the date the Employee is no longer receiving Appropriate Care;
8.   the date the Employee fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

Benefits may be resumed if the Employee begins to cooperate fully in the Rehabilitation Plan or a Transitional Work Arrangement within 30 days of the date benefits terminated.

TL-007502.00

## EXCLUSIONS

The Insurance Company will not pay any Disability Benefits for a Disability that results, directly or indirectly, from:
1.   suicide, attempted suicide, or self-inflicted injury while sane or insane.
2.   war or any act of war, whether or not declared.
3.   terrorism or active participation in a riot.
4.   Injury or Sickness while the Employee is serving on full-time active duty in any armed forces. If the Employee sends proof of service, the Insurance Company will refund pro rata the premium paid to cover the Employee during a period of such service.
5.   commission of a felony.
6.   the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

In addition, the Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee is incarcerated in a penal or corrections institution.

TL-007503.00

PITTSBURGH

NOV 1 6 2000

Group Life & Disability
Coverage Unit

16

 

## CLAIM PROVISIONS

**Notice of Claim**
Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

**Claim Forms**
When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**
The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

**Proof of Loss**
Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

NOV 1 6 2000

 

**To Whom Payable**
Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company may, at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

**Physical Examination and Autopsy**
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Insured will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

18

NOV 16 2000

Group Life & Disability
Coverage Unit

 

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 24 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guaranteed if any of the following events take place.

1. The terms of the Policy change.
2. A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy.
3. There is a change in the factors bearing on the risk assumed.
4. Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.
5. The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Notice of Cancellation**
The Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

The Insurance Company may cancel the Policy as of any Premium Due Date if the participation requirements are not met.

PITTSBURGH

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

**Policy Grace Period**

A Policy Grace Period of 31 days will be granted for the payment of the required premiums under the Policy. The Policy will be in force during the Policy Grace Period. If the required premiums are not paid during the Policy Grace Period, insurance will end on the last Premium Due Date. The Employer will be liable to the Insurance Company for any unpaid premium for the time the Policy was in force.

**Grace Period for the Insured**

If the required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**

An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence.

An Employee's insurance may be reinstated only if reinstatement occurs within 12 weeks from the date insurance ends due to an Employer approved unpaid leave of absence. For insurance to be reinstated the following conditions must be met.

1. An Employee must be in a Class of Eligible Employees.
2. The required premium must be paid.
3. A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation (if any) before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720



PITTSBURGH

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud or eligibility for coverage.

**Misstatement of Age**
If an Insured's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**Policy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.

**Certificates**
A certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Insured's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnisheed, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

PITTSBURGH

NOV 1 6 2000

Group Life & Disability
Coverage Unit

 

**Agency**
The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.  He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2.  The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Appropriate Care**
Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Disability Earnings**
Any wage or salary for any work performed for any Employer during the Employee's Disability, including commissions, bonus, overtime pay or other extra compensation.

**Employee**
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

PITTSBURGH

NOV 1 6 2000

Gre... ... ... Disability
Coverage Unit

22

 

**Employer**
The Employer who has subscribed to the Policyholder and for the benefit of whose Employees this policy has been issued. The Employer, named as the Subscriber on the front of this Policy, includes any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

**Full-time**
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Good Cause**
A medical reason preventing participation in the Rehabilitation Plan or in a Transitional Work Arrangement. Satisfactory proof of Good Cause must be provided to the Insurance Company.

**Indexed Covered Earnings**
For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.     10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.     the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**
Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

**Insurability Requirement**
An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**
The Insurance Company underwriting the Policy is named on the Policy cover page.

**Insured**
A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

PITTSBURGH

NOV 16 2000

Group Life & Disability
Coverage Unit

23

 

**Life Status Change**

A Life Status Change is an event recognized by the Employer's Flexible Benefits Plan as qualifying an Employee to make changes in benefit selections at a time other than an Annual Enrollment Period.

If there is no Employer sponsored Flexible Benefits Plan, or if it is no longer in effect, the following events are Life Status Changes.
1.      Marriage
2.      Divorce, annulment or legal separation
3.      Birth or adoption of a child
4.      Death of a spouse
5.      Termination of a spouse's employment
6.      A change in the benefit plan available to the Employee's spouse
7.      A change in the Employee's or spouse's employment status that affects either's eligibility for benefits

**Physician**

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

**Qualified Alternative**

An occupation that meets all of the conditions that follow:
1.      the material duties of the occupation can be performed by the Employee based on his or her training, experience or education;
2.      it is within the same geographic area as the Regular Occupation the Employee holds with the Employer on the date the Employee's Disability begins;
3.      a job in that occupation is offered to the Employee by the Employer; and
4.      the wages for that occupation, including commissions and bonus are 80% or more of the Employee's Indexed Covered Earnings.

**Regular Occupation**

The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.

**Rehabilitation Plan**

A professionally developed, written plan designed to enable the Employee to return to work. The Rehabilitation Plan will consist of one or more of the following phases:
1.      assessment;
2.      rehabilitation, under which the Insurance Company may provide, arrange or authorize educational, vocational or physical rehabilitation or other appropriate services;
3      work, which may include modified work, Transitional Work Arrangements, and work on a part-time basis.

PITTSBURGH

NOV 1 6 2000

Disability

 

**Sickness**
Any physical or mental illness.

**Transitional Work Arrangement**
Work at an occupation for wage or profit offered to the Employee by any employer if all the following conditions are met:

1. the sum of wages, commissions, bonus and other compensation for that work is 20% or more of the Employee's Indexed Covered Earnings;

2. at the time the work is offered, the Employee can perform, with or without accommodation, some or all of the material duties of that occupation; and

3. the Employee is Disabled.

TL-007500.00

PITTSBURGH

NOV 16 2000

Group Life        lity
Coverage    ist

 

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, TRUSTEE OF THE GROUP INSURANCE TRUST FOR EMPLOYERS IN THE SERVICES INDUSTRY, whose main office address is Wilmington, Delaware hereby apply on behalf of The TriZetto Group, Inc. to the LIFE INSURANCE COMPANY OF NORTH AMERICA for Group Policy No. VDT-030048.

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

This application supersedes any previous application for this Group Policy.

TRUSTEE OF THE GROUP INSURANCE TRUST
FOR EMPLOYERS IN THE SERVICES INDUSTRY
(Full or Corporate Name of Applicant)

Signed at_____    By _____
(Signature and Title)

On_____    Witness _____
(To be signed by Licensed Resident Agent where required by law)
(This Copy Is To Remain Attached To The Policy)

TL-004778

---

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
**PHILADELPHIA, PA 19192-2235**

We, TRUSTEE OF THE GROUP INSURANCE TRUST FOR EMPLOYERS IN THE SERVICES INDUSTRY, whose main office address is Wilmington, Delaware hereby apply on behalf of The TriZetto Group, Inc. to the LIFE INSURANCE COMPANY OF NORTH AMERICA for Group Policy No. VDT-030048.

We approve and accept the terms of this Group Policy.

This application is to be signed in duplicate. One part is to be attached to the Group Policy; the other part is to be returned to the LIFE INSURANCE COMPANY OF NORTH AMERICA.

This application supersedes any previous application for this Group Policy.

TRUSTEE OF THE GROUP INSURANCE TRUST
FOR EMPLOYERS IN THE SERVICES INDUSTRY
(Full or Corporate Name of Applicant)

Signed at_____    By _____
(Signature and Title)

On_____    Witness _____
(To be signed by Licensed Resident Agent where required by law)
(This Copy Is To Be Returned To Us)

TL-004778

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
Suite 200
1033 University Place
Evanston, IL 60201

Date: FEB 23 2006

MAR 0 3 2006

Adrienne J. Heitz
732 Plum Tree Ct
Wheeling, IL 60090

08CV4849
JUDGE HART
MAGISTRATE JUDGE SCHENKIER
YM

### NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review of the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255.** Please put the Social Security number shown above on any appeal you file.

Adrienne J. Heitz (324-46-▓▓▓0)                 Page 2 of 2

## Time To File An Appeal

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart J.

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulations exists. Section 404.970 of the regulations lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

Adrienne J. Heitz (324-46-████)                    Page 3 of 3

## If You Have Any Questions

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (847)222-1877. Its address is Social Security, 215 South Elmhurst Rd, Prospect Heights, IL 60070.

Angelo Nicchitta
Administrative Law Judge

cc:  Ronald Morovitz
     One Corporate Drive
     Swansea, IL 62226

**SOCIAL SECURITY ADMINISTRATION**
Office of Hearings and Appeals

**DECISION**

<u>IN THE CASE OF</u>                    <u>CLAIM FOR</u>

                                        Period of Disability and
Adrienne J. Heitz                       Disability Insurance Benefits
(Claimant)


                                        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
(Wage Earner)                           (Social Security Number)

## INTRODUCTION

On July 7, 2003, the claimant filed an application for Disability Insurance Benefits. The claim was denied initially and on reconsideration, and a request for hearing was timely filed on January 8, 2004. A hearing was subsequently held on February 7, 2006 in Evanston, Illinois. Appearing and testifying at the hearing were the following: . The claimant alleges disability beginning January 31, 2003. Ronald Morovitz, a non-attorney, represents the claimant in this matter.

The general issue is whether the claimant is entitled to a period of disability and Disability Insurance Benefits under sections 216(i) and 223 of the Social Security Act. The specific issue is whether she is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for Disability Insurance Benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that she has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

## EVALUATION OF THE EVIDENCE

The claimant has not engaged in substantial gainful activity at any time since the alleged onset date.

The claimant has the following medically determinable "severe" impairment: a visual impairment, status-post multiple surgical procedures.

Adrienne J. Heitz (324-46-■■■0)                              ●              Page 2 of 2

The claimant does not have an impairment that meets or equals the criteria of any listed impairment. A determination must therefore be made of whether she retains the residual functional capacity to perform the requirements of her past relevant work or can adjust to other work.

The claimant is unable to see well enough to perform fine visual tasks and would be a danger to herself and others in a work setting due to her poor vision.

In her Disability Report the claimant alleged disability because of bilateral spontaneous retinal detachments. She reported that she experiences blurred vision, floaters, and hazy vision which prevents her from doing basic things like watching television or reading a computer screen. In her Reconsideration Disability Report she indicated that she had undergone surgeries, but still could not see at that point. She noted that she had floaters in her right eye and cannot see to read the small print in the newspaper. She gave another example, saying her blurred vision prevented her from seeing her fingernails or anything similarly small. She noted she cannot drive and emphasized her night vision is particularly bad.

The record shows that the claimant underwent a vitrectomy with scleral buckling for repair of macular-off retinal detachment of the left eye on January 30, 2003. She developed a posts-vitrectomy cataract. The right eye also was operated on for macular retinal detachment and she underwent scleral buckling. She also had cataract surgery in the right eye.

The claimant underwent a laser capsulotomy in 2004 to try to remove the cloudy membranous posterior capsular opacity so as to improve vision. She was reporting poor night vision, difficulty reading traffic signs, street signs or store signs, and doing fine handwork.

A note dated January 27, 2005 reported decreased vision in the left eye with evidence of loss of foveal reflex. The claimant underwent a pars plana vitrectomy and membrane delamination on March 18, 2005. As of April 20, 2005 there was some improved visual acuity, but the blurriness persisted. Her right eye vision was plagued by worsening floaters.

An October 25, 2005 treatment note indicates that the claimant was complaining of a spot in her left eye central vision. A January 4, 2006 treatment note indicates that the claimant was still complaining of a haze over her visual acuity which is constant but some days are worse than others. She was having difficulty focusing and the images were still distorted.

Consideration of the SSR 96-7p factors in this case supports the findings contained herein. The claimant was sincere and credible in her testimony at the hearing. Her complaints have been consistent both in the medical records and in the forms filed in connection with this appeal throughout the period since her alleged onset date. She has a very good work history and was earning a good wage at the time of her alleged onset date and it stands to reason that she would return to work at her relatively young age if she were able rather than seek disability benefits. She also has clearly sought extensive treatment for her symptoms, including multiple surgeries that an individual would not likely subject herself to if the symptoms were not very troublesome. Her description of her daily activities is consistent with her alleged symptoms and quite limited.

Adrienne J. Heitz (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)                                               Page 3 of 3

Overall, although the undersigned acknowledges that the claimant's visual acuity per se is not greatly diminished, her subjective complaints of blurriness and floaters interfering with basic tasks is considered credible and the state agency opinions are not accepted for all of the reason discussed throughout this decision.

Because of the limitations noted above, the claimant is unable to perform her past relevant work or any other work existing in significant numbers in the economy, as all work requires the ability to avoid endangering others as well as yourself.

In accordance with a finding that the claimant has been under a disability beginning January 31, 2003, she is entitled to Disability Insurance Benefits on the basis of her application of July 7, 2003.

Because the claimant's condition may improve in the near future, it is recommended that a medical review be conducted within 12 months.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits as of the established onset date.

2.  The claimant has not engaged in substantial gainful activity since January 31, 2003.

3.  The medical evidence establishes that the claimant has the following "severe" impairment: a visual impairment, status-post multiple surgical procedures.

4.  The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

5.  The claimant's assertions concerning her ability to work are credible.

6.  The claimant is unable to see well enough to perform fine visual tasks and would be a danger to herself and others in a work setting due to her poor vision..

7.  The claimant is unable to perform the requirements of her past relevant work.

8.  The claimant's residual functional capacity prevents the performance of any work existing in significant numbers in the economy.

9.  The claimant has been under a disability, as defined in the Social Security Act, since January 31, 2003 (20 CFR §404.1520(g)).

Adrienne J. Heitz (324-46-████)                                    Page 4 of 4

## **DECISION**

It is the decision of the Administrative Law Judge that, based on the application filed on July 7, 2003, the claimant is entitled to a period of disability commencing January 31, 2003, and to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social Security Act.

It is recommended that a medical review be conducted within 12 months.

Angelo Nicchitta
Administrative Law Judge

FEB 2 3 2006

Date

Andrea Russo
CIGNA Group Insurance
L250
PO Box 22325
Pittsburgh, PA 15222-0325

Phone: 800-238-2125 ext. 3230
Fax: 412-402-3222

**CIGNA Group Insuran**
Life · Accident · Disability

ADRIENNE HEITZ
732 PLUM TREE COURT
WHEELING, IL 60090

08CV4849
JUDGE HART
MAGISTRATE JUDGE SCHENKIER
YM

November 28, 2007

Name:                          ADRIENNE HEITZ
Incident Number:               805335
Plan/Policy Number:            VDT0030048
Plan/Policy Holder:            THE TRIZETTO GROUP, INC. ATTN: LYNNE DORNHECKER
Underwriting Company:          Life Insurance Company of North America

DEAR ADRIENNE HEITZ,

This is in reference to your letter appealing the denial of your Long Term Disability claim.

As we previously explained in our letter dated January 31, 2007, we will consider another appeal, however we must be provided with new medical documentation to support a functional impairment as of March 2006 and to the present.

At this time, we are unable to consider an appeal review of your Long Term Disability claim, as we have not been provided with new medical documentation related to the time period in question which would reverse our prior decision. Although you have provided an examination note of June 1, 2007 and a letter from Dr. Garoon dated August 21, 2007 this information does not provide information relevant to the timeframe under review. In addition the Peer Review of December 6, 2006 and January 7, 2007, previously reviewed your file and addressed your condition and the exam findings which are consistent with the new information submitted.

Please contact our office at 800-238-2125 ext. 3230 should you have any questions.

Sincerely,

*Andrea Russo*

Andrea Russo
Appeal Claim Manager

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.